## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **JEFFREY J. SPERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 04-3125-CM |
| ) | |
| **ROGER WERHOLTZ,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### MEMORANDUM AND ORDER NUNC PRO TUNC

On September 11, 2008, the court filed its original order dismissing plaintiff's Fourteenth Amendment claim. In that order, the court stated that it appeared that plaintiff's Fourth Amendment, criminal deprivation of property, conversion, and illegal taxation claims remained pending. The court's statement was gratuitous and had no bearing on the court's ruling. Upon further review of the record, the court finds that those claims were not included in the pretrial order (Doc. 92). As stated in the pretrial order, the "pretrial order shall supersede all pleadings and control the subsequent course of this case." Because plaintiff's Fourth Amendment, criminal deprivation of property, conversion, and illegal taxation claims were not preserved in the pretrial order, they are not pending before the court. The only claim remaining before the court is plaintiff's Fourteenth Amendment claim. The court hereby issues this Memorandum and Order Nunc Pro Tunc to correctly reflect the pretrial order and record. The court's ruling on Defendant's Second Motion for Summary Judgment (Doc. 87) remains the same and is set out below.

Plaintiff Jeffrey J. Sperry, an inmate at the Lansing Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983 against defendant Roger Werholtz, Secretary of Corrections, in his

individual and official capacities. Plaintiff alleges that defendant violated his Fourteenth Amendment rights by placing money received by him into forced or mandatory savings accounts. This matter is before the court on Defendant's Second[1] Motion for Summary Judgment.

I.      **Factual Background**[2]

As an initial matter, the court notes that plaintiff's response to defendant's Second Motion for Summary Judgment fails to controvert defendant's facts, which are appropriately numbered and reference the record in support thereof. Local Rule 56.1 requires that a party opposing a motion for summary judgment set forth each fact in dispute and refer with particularity to those portions of the record upon which it relies in disputing such factual contentions. *Id.* 56.1(b)(1). Accordingly, those material facts which plaintiff has failed to adequately controvert are deemed admitted for purposes of summary judgment. *Id.* 56.1(b)(2).

Plaintiff is incarcerated at Lansing Correctional Facility in Lansing, Kansas. Pursuant to Kan. Stat. Ann. § 76-172 *et seq*. and under the supervision of defendant Werholtz, the Kansas Department of Corrections ("KDOC") enacted and enforces Inmate Management Policy and Procedure ("IMPP") 04-103. IMPP 04-103 mandates that 10% of all funds collected by an inmate

---

[1] Although titled "Second Motion for Summary Judgment," this motion is the third motion for summary judgment that defendant has filed since the case began. Plaintiff requests that the court deny defendant's motion because it is the third motion for summary judgment. Plaintiff argues that the successive motions cause undue litigation and hardship on plaintiff's ability to litigate his case. After reviewing the record, the court finds that defendant's motion is appropriate. Discovery was completed after plaintiff's second motion for summary judgment. Considering defendant's summary judgment motion after discovery is complete promotes judicial efficiency. Plaintiff's request is denied.

[2] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

from sources outside of the KDOC be placed in a savings account and held until the inmate's release. This procedure is commonly known as "forced savings." The funds accrued by each inmate are kept in the inmate's trust fund and are provided to the inmate upon release. Use of funds from the forced savings account is limited to payment of garnishments and community identifications—birth certificate, driver's license, and social security card. If the inmate's cash balance is exhausted, the money may be used, if approved by the warden, for services that would facilitate the inmate's reentry into the community such as civil filing fees, transcript fees, and subpoena fees.

In addition to forced savings under IMPP 04-103, IMPP 04-109 requires inmates who are employed through private industry or work-release programs to deposit a specified portion of their earnings into a mandatory savings account. These funds are also kept in the inmate's trust fund. Use of funds from the mandatory savings account is limited to payment of garnishments. Until June 4, 2007, the funds from the forced savings account and mandatory savings account were kept in the same account. Since June 4, 2007, the two accounts have been tracked and reported separately. In addition to the forced savings account and mandatory savings account, an inmate may have a cash account—which is made up of all other monies in the inmate's possession. The cash account is also kept in the inmate's trust fund and is used (1) to purchase items from the commissary, reading materials, and handicraft items; (2) to send money to the inmate's family; and (3) for other purposes allowed by KDOC policies.

An inmate's trust fund includes funds from his or her forced savings account, mandatory savings account, and cash account. The custodian of the inmate's trust fund is required, under state law, to deposit all trust fund money into interest-bearing accounts at federally-insured financial institutions. If the inmate has provided a valid social security number, the interest generated by the

inmate's trust fund is prorated and allocated to the inmate's forced savings account, mandatory savings account, and cash account. The prorated allocation is based on the "proportion that each inmate sum of daily balances in the account bears to the total sum of daily balances that all inmates have in such account." (Def.'s Memo. Ex. 1, ¶3.) Interest earned on an inmate's account that does not have a social security number is paid to the inmate benefit fund. All funds collected through the forced and mandatory savings programs are distributed to the inmate upon his or her release from custody. If the inmate dies while in custody, the funds pass to his or her estate. A KDOC employee oversees these inmate accounts.

Plaintiff is subject to these regulations. As of December 12, 2007, no funds deposited in plaintiff's forced or mandatary savings account had been withdrawn. Defendant Werholtz has never converted inmate funds for agency use, nor has he directed a subordinate employee to do so.

## II.    Standards for Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The court acknowledges that plaintiff appears pro se and his response is entitled to a less stringent standard than a response filed by a licensed attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This does not, however, excuse plaintiff from the burden of coming forward with evidence to support his claims as required by the Federal Rules of Civil Procedure and the local rules of this court. And the court will not assume the role of advocate for the pro se litigant. *Hall*,

935 F.2d at 1110.

## III. Discussion

Without any support for his factual allegations, plaintiff alleges that he is permanently deprived of the use or benefit of the forced and mandatory savings account money because (1) he is unlikely to be released from prison and (2) the money is deposited into a KDOC bank account for KDOC use.[3] Plaintiff argues this violates his Fourteenth Amendment right to due process. "In order to prevail on [his] 42 U.S.C. § 1983 claim, plaintiff must demonstrate that [he] suffered a deprivation of a federally protected right." *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003).

The court will first consider plaintiff's due process claim. As the Supreme Court explained in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998):

> "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974), whether the fault lies in a denial of fundamental procedural fairness, *see, e.g., Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, *see, e.g., Daniels v. Williams*, 474 U.S. [327, 331 (1986)] (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised).

523 U.S. 833 at 846–47 (1998). Plaintiff does not specify whether he alleges violations of substantive or procedural due process, and thus, the court will consider both.

When evaluating a procedural due process claim the court considers (1) whether the individual possessed a protected property interest to which due process protection was applicable; and (2) whether the individual was afforded an appropriate level of process. *Camuglia v. City of*

---

[3] In his response, plaintiff refers to his Amended Complaint, however, he never filed an amended complaint, and thus, it is not before the court.

*Albuquerque*, 448 F.3d 1214, 12 (10th Cir. 2006). The substantive component of the Due Process Clause is violated only when government action "'shocks the conscience'" and "violates the 'decencies of civilized conduct.'" *County of Sacramento*, 523 U.S. 833 at 846 (citing *Rochin v. California*, 342 U.S. 165 (1952)).

As explained in *Larkin v. Werholtz*, No. 07-3325-SAC, 2008 WL 852126, at *2–3 (D. Kan. March 28, 2008), the Tenth Circuit has not clearly determined whether an inmate has a protected property interest in money given to him from outside sources or money earned from prison wages. 2008 WL 852126, at *2–3 (recognizing that the Tenth Circuit stated that inmates have a property interests in money from friends and family outside the facility, but later characterized the statement as dicta.) The court will assume without deciding that plaintiff has a protected property interest in the money subject to the forced and mandatory savings accounts.

IMPP 04-103 and 04-109 provide for wages and outside money to be placed into forced or mandatory savings accounts regardless of the inmate's release date. Therefore, there was no need for a pre-deprivation hearing to determine when plaintiff would be released or whether plaintiff was subject to the policies, because the deductions apply to all inmates and would have been properly made either way. Thus, plaintiff's procedural due process rights were not violated. *See, e.g., Ellibee v. Simmons*, 201 F. App'x 612, 615 (10th Cir. 2006) (denying claim alleging that mandatory wage deductions for the crime victims compensation fund was a violation of procedural due process because deduction occurred regardless of whether the inmate's sentence included an order of restitution).

Mandating savings accounts does not "shock the conscience." Plaintiff is only deprived of the use of money that is derived from an outside source or from prison wages and he is only deprived of the funds while he is in prison. The funds in the forced and mandatory savings accounts

are used only to pay plaintiff's garnishments and for his community identifications. If his cash balance is depleted, he may use the funds for services that would facilitate his reentry into the community. The money remains his. It is put in an interest-bearing account and he receives the interest earned on the money. The funds are never used for KDOC purposes. When he is released from the KDOC's custody, the funds will be release to him. In the event he dies in prison, the funds will be passed on to his estate. None of the funds in plaintiff's forced or mandatory savings accounts have been withdrawn.

Plaintiff argues that the court should apply the test set forth in *Turner v. Safley*, 482 U.S. 78 (1987) (setting forth factors to be considered when determining the reasonableness of a prison regulation). But when reviewing property and liberty interest claims arising from prison conditions, the court considers whether the prison condition complained of presents "the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest." *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). The alleged deprivation is not atypical. "Limitations on inmates' use and receipt of money while in prison are ordinary incidents of prison life and are well within the bounds of what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction." *Larkin*, 2008 WL 852126, at *4. "[I]t is well-established that prisons have broad discretion in regulating the entry of materials into prison." *Id.* An inmate's right to receive materials may be limited for legitimate penological interests. *Steffey v. Orman*, 461 F.3d 1218 (10th Cir. 2006). KDOC has the forced and mandatary savings accounts for a legitimate penological interest—to assist inmates with reentry into the community upon release. *See, e.g., Larkin*, 2008 WL 852126, at *4 (citing *Ellibee v. Simmons*, 85 P.3d 216 (Kan. Ct. App. 2004). And prison officials have a legitimate interest in controlling the amount and source of funds received by inmates. *Steffey*, 461 F.3d at 1222.

The alleged deprivation is not a significant deprivation. As discussed above, KDOC does not take plaintiff's money. It simply holds a small percentage of plaintiff's funds while he is incarcerated. Such a deprivation does not violate defendant's substantive due process rights. *See, e.g., Larkin*, 2008 WL 852126, at *4 (holding no violation of a constitutional magnitude can be shown when an inmate is merely denied the use of a small percentage of the money given to him during his period of incarceration). Accordingly, the court finds that putting money plaintiff receives from outside sources and wages into a forced or mandatory savings account is not a violation of due process.

**IT IS THEREFORE ORDERED** that Defendant's Second Motion for Summary Judgment (Doc. 87) is granted.

Dated this 12th day of September 2008, at Kansas City, Kansas.

                                       **s/ Carlos Murguia**
                                       **CARLOS MURGUIA**
                                       **United States District Judge**