# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|                          |   |                     |
|--------------------------|---|---------------------|
| JEFFREY J. SPERRY,       | ) |                     |
|                          | ) |                     |
| Plaintiff,               | ) |                     |
|                          | ) | CIVIL ACTION        |
| v.                       | ) |                     |
|                          | ) | No. 04-3125-CM      |
|                          | ) |                     |
| ROGER WERHOLTZ,          | ) |                     |
|                          | ) |                     |
| Defendant.               | ) |                     |

## MEMORANDUM AND ORDER

Plaintiff Jeffrey J. Sperry, an inmate in the custody of the Kansas Department of Corrections ("KDOC"), brings this action pursuant to 42 U.S.C. § 1983 against defendant Roger Werholtz, Secretary of KDOC. Plaintiff alleges defendant violated plaintiff's First, Fourth, and Fourteenth Amendment rights by amending Kansas Administrative Regulation § 44-12-313, effective date April 1, 2004, to prohibit the possession of sexually explicit materials by inmates in state correctional facilities. This matter is before the court on Defendant's Motion for Summary Judgment (Doc. 125); Plaintiff's Motion for Summary Judgment (Doc. 127); and Plaintiff's Motion to Strike Defendant's Affidavit (Doc. 130).

**I.     Plaintiff's Motion to Strike**

Plaintiff seeks to strike the affidavit submitted by defendant in support of defendant's motion for summary judgment, arguing certain statements in the affidavit are either false; not based upon personal knowledge; or are inadmissible because defendant has not been designated as an expert. Federal Rule of Civil Procedure 56(e)(1) provides that an affidavit submitted in support or opposition of summary judgment "must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant is competent to testify to the matters stated." Fed. R. Civ. P. 56(e). If an affidavit fails to meet any of the three requirements, it is subject to a motion to strike; however, the court may enforce this rule by simply disregarding the portions of the affidavit it finds insufficient. *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1178 (D. Kan. 2008); *Maverick Paper Co. v. Omaha Paper Co.*, 18 F. Supp. 2d 1232, 1234–35 (D. Kan. 1998) (noting the court usually does not strike affidavits but disregards those portions which are not shown to be based upon personal knowledge or otherwise do not comply with Rule 56(e)).

Defendant's affidavit relies on his years of experience with KDOC. Defendant has served the KDOC for more than 27 years. Prior to his appointment as Secretary, effective January 12, 2003, he served in a variety of positions within KDOC, including Deputy Secretary for the Divisions of Community and Field Services, Programs and Staff Development, and Facilities Management. The qualifications, responsibilities, and duties of the Secretary of KDOC are set forth in the Kansas Statutes. According to Kan. Stat. Ann. § 75-5203(b), defendant had to meet the following requirements before being appointed Secretary:

> (1) has had at least five years' experience in the field of corrections or as an executive officer in the administration of federal or state penal or correctional institutions; or
> (2) (A) has had at least three years experience in the field of corrections or as an executive officer in the administration of federal or state penal or correctional institutions; and (B) has a degree from an accredited college or university, which degree is based on penology or a related field as a major or study; or
> (3) (A) has had at least five years' experience as a federal, appellate or district judge or federal, district or county prosecutor, five years' experience in military administration or administration of a criminal justice agency or five years' administrative experience treating criminal offenders through programs involving penal custody, parole, probation and sentencing; (B) has a degree from an accredited college or university, which degree is in a social or behavioral science, penology, corrections, criminal justice, police science, criminology, public administration, local

>corrections programs or a related field; and (C) has demonstrated
>administrative ability and leadership.

His duties as Secretary are outlined in Kan. Stat. Ann. § 75-5201 *et. seq*. His responsibilities include providing general supervision and management of the correctional institutions within Kansas. Kan. Stat. Ann. § 75-5205. He has the power, and duty, to: (1) examine and inquire into all matters connected with the government and discipline of the correctional institutions; (2) require reports from the warden or other officers of any Kansas correctional institution in relation to any or all correctional matters; and (3) have free access to the correctional institutions at all times, and all the books, papers, accounts and writings pertaining to the correctional institutions, or to the business, government, discipline or management of the correctional institutions. Kan. Stat. Ann. § 75-5251. The court finds that the following statements were made with personal knowledge, that the statements are admissible facts, and that defendant is competent to testify as to them.

*Sexually explicit materials, in any form, tend to disrupt the overall security of a correctional facility.*

Plaintiff argues this statement has to be false because sexually explicit materials were permitted in KDOC facilities for decades "without any security issues whatsoever." Plaintiff's only support for his allegation is that he has never heard of any incident in which sexually explicit material created a security threat. Plaintiff is an inmate within a KDOC facility. Nothing in the record suggests that he would be knowledgeable about the security threats throughout the entire KDOC. Defendant, on the other hand, has personal knowledge of the potential security issues pertaining to each of the correctional facilities within KDOC. He has served the KDOC for more than 27 years in a variety of positions. As Secretary, he has access to information regarding security threats throughout KDOC. Plaintiff's limited experience at KDOC does not establish that defendant is making false statements about the effects sexually explicit materials have on the security of

correctional facilities. The court finds that defendant's statement complies with Rule 56(e).

> *Prior to the amendment of the regulation in question, there had been complaints from KDOC staff about having to review the materials while performing their duties.*

Plaintiff claims that this assertion is false based on discovery responses in which defendant stated that he did not possess, control, or have custody of any documents regarding complaints, lawsuits, or other documentation filed by any KDOC employee based on having to view, inspect or search sexually explicit material as part of their employment duties. Defendant's statement in his affidavit says that there had been complaints, not that the complaints were written or memorialized in writing. Defendant's discovery response merely indicated that he did not possess any documents regarding the complaints; it did not say that he never received any complaints. The record supports that defendant has personal knowledge of these types of complaints. His experience with the KDOC would have exposed him to such complaints and nothing in the record suggests that this statement is false.

> *There is a potential for KDOC to suffer lawsuits from KDOC employees due to exposure to sexually explicit materials.*

Plaintiff argues that the court should strike this statement because it is a legal opinion. Federal Rule of Evidence 701 provides, in pertinent part, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." As Secretary of KDOC, defendant is responsible for the general supervision and management of the correctional institutions. It is within his job duties to be aware of situations that would expose KDOC to lawsuits. In his affidavit, defendant testified that KDOC employees had complained about being exposed to sexually

-4-

explicit materials. He is not opining on the merits of such lawsuits, he merely states that the sexually explicit material exposes KDOC to lawsuits. His statement regarding potential lawsuits is within his realm of personal knowledge. The court finds defendant's statement is an admissible opinion under Rule 702.

> *Homosexual inmates are identified by receiving homosexual publications which subjects them to exploitation and attack of other inmates.*

In support of plaintiff's allegation, he claims "i[]nmates regularly receive openly homosexual publications that are not sexually explicit (e.g.[,] Genre, Out, etc.) which can identify them as homosexuals." Plaintiff's complaint goes to the weight, not the truth, of defendant's statement. Defendant's statement is not negated by the fact inmates receive other homosexual publications. Thus, the court will not strike it as being false.

> *The regulation in question reduced the amount of resources KDOC has to spend reviewing and censoring publications, and appeal procedure from such censorship.*

Plaintiff relies on the fact that KDOC has seized 1,195 magazines and books since 1995—108 publications in the nine years before the April, 2004 amendment and 1,087 in the five years since. This alone does not make defendant's statement false. Defendant's statement is based on his many years of experience in corrections administration. He has personal knowledge of the amount of resources KDOC spent reviewing publications, processing and deciding appeals, processing notifications and other information, and managing sex offenders who received such materials by illicit dealing and trading with non-sex offenders, as opposed to the amount of resources KDOC now spends after the amendments. The court finds that defendant's statement is reliable and properly submitted in support of defendant's motion for summary judgment.

> *No alternative remedy could have been implemented.*

Plaintiff relies on defendant's discovery responses to argue that this statement is false. During

discovery, plaintiff asked, "[h]ow many other alternatives did defendant consider before deciding that a blatant violation of the First Amendment was the only avenue KDOC could apply to obtain its goal?" In response, defendant objected to the interrogatory "as argumentative, assuming facts not in evidence, and assuming the truth of facts that are in dispute in this matter." Defendant did not indicate whether he had considered alterative remedies. Defendant's discovery response does not contradict defendant's statement or support plaintiff's assertion that defendant's statement is false.

*Defendant was not personally involved in the loss of property suffered by plaintiff in this complaint.*

Plaintiff argues this statement is false because defendant admits that he implemented the regulation. In his affidavit, defendant states that he did not force plaintiff to dispose of his sexually explicit property. It appears defendant means that he did not personally oversee the disposal of plaintiff's sexually explicit material, not that defendant did not implement the policy that ultimately lead to plaintiff having to dispose of the material. Based on the record, the court will not strike defendant's statement; however, the court recognizes that defendant's implementation of the regulation is the reason that plaintiff was forced to dispose of his sexually explicit material.

Plaintiff also argues that defendant cannot give expert testimony regarding whether sexually explicit material promotes paraphilias and sexual deviance. As discussed above, a non-expert's testimony in the form of opinions or inferences is limited to those opinions or inferences that are (1) rationally based on the perception of the witness, (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701.

Through his experience as a corrections administrator, defendant is familiar with the various types of sex offenders and their behaviors. As the Deputy Secretary for Programs, he was directly

responsible for overseeing the programs relating to the treatment and management of sex offenders. His statement is not an expert opinion, it merely says that the amendment addresses the *potential* for such material to promote paraphilias and sexual deviance. Based on defendant's years of experience in corrections administration and dealing with sex offenders, the court finds that the statement is admissible under Rule 702.

Finally, relying on *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986), plaintiff argues that defendant's affidavit should be stricken because it contains facts that are false and contrary to evidence submitted during discovery in an attempt to create a sham fact issue. "Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Franks*, 796 F.2d at 1237. Here, there is no prior testimony to contradict—defendant's only testimony in this case is his affidavit. As discussed above, defendant's affidavit does not contradict his statements made or the information provided during discovery.

The court finds that defendant's affidavit complies with Rule 56(e).

**I. Motions for Summary Judgment**

The parties have filed cross-motions for summary judgment on each of plaintiff's claims.[1]

**A. Standards for Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Plaintiff's summary judgment briefing focuses on his First Amendment claim; he does not address his Fourth or Fourteenth Amendment claims.

56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The court acknowledges that plaintiff appears pro se and his response is entitled to a less stringent standard than a response filed by a licensed attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This does not, however, excuse plaintiff from the burden of coming forward with evidence to support his claims as required by the Federal Rules of Civil Procedure and the local rules of this court. And the court will not assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110.

### B. Factual Background[2]

At all times relevant to plaintiff's complaint, plaintiff was an inmate in the custody of the Kansas Secretary of Corrections at the Lansing Correctional Facility ("LCF") in Lansing, Kansas, and defendant was the Secretary of KDOC. In 2004, KDOC amended Kan. Admin. Regs. § 44-12-313 to read:

> (a) No inmate shall have in possession or under control any sexually explicit materials, including drawings, paintings, writing, pictures, items, and devices.
> (b) The material shall be considered sexually explicit if the purpose of the material is sexual arousal or gratification and the material meets either of the following conditions:
>   (1) Contains nudity, which shall be defined as the depiction or display of any state of undress in which the human genitals, pubic region, buttock, or female breast at a point below the top of the aerola [sic] is less than completely and opaquely covered; or
>   (2) contains any display, actual or simulated, or description of any of the

---

[2] The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record. The court addressed the parties' disputes over many of the facts when it considered plaintiff's motion to strike.

-8-

>           following:
>               (A) Sexual intercourse or sodomy, including genital-genital, oral-
>                   genital, anal-genital, and anal-oral contact, whether between persons
>                   of the same or differing gender;
>               (B) masturbation;
>               (C) bestiality; or
>               (D) sadomasochistic abuse.
>       (c) Each violation of this regulation by inmates classified as sex offenders
>       shall be a class I violation.
>       (d) Each violation of this regulation by inmates not classified as sex
>       offenders shall be a class II violation.
>       (e) Each violation of this regulation by any inmate if the sexually explicit
>       material depicts, describes, or exploits any child under the age of 18 years
>       shall be a class I offense.

The regulation does not prohibit specific authors or publication companies. Inmates continue to retain the ability to possess periodicals in general through subscription orders, as long as the incoming publication does not contain prohibited content. Additionally, inmates have access to publications provided in the general library maintained for inmate use at each facility, as well as television, movies, and the telephone.

Defendant decided to prohibit sexually explicit publications and items from correctional facilities to help with institutional security, facilitate rehabilitation of sex offenders, and prevent sexual harassment. Through his affidavit, defendant testified that he made the decision for the following reasons: Sexually explicit materials are a general impediment to the preservation of security at KDOC facilities. They can reasonably be expected to lead to the open performance of lewd acts, which disrupts overall security and order. The possession of sexually explicit materials can openly identify an inmate as homosexual and create an immediate security concern, as such inmates are often targeted for exploitation or violent attack. Sexually explicit materials disrupt and interfere with the treatment and management of sex offenders. The blanket ban prevents sex offenders from having access to such materials directly or by illicit dealing and trading of sexually

explicit materials with non-sex offenders. The materials may also be used to sexually harass staff members. There was a potential for staff to file sexual harassment complaints due to exposure to the materials in the workplace environment. Prior to the amendments to Kan. Admin. Regs. § 44-12-313, KDOC had received complaints from prison staff about being required to view these materials while performing their duties. Inmates had also made comments referencing comparisons between prison staff and individuals in the publications or other materials.

On March 22, 2004, the inmates were provided notice of the amendment to Kan. Admin. Regs. § 44-12-313, informing them that they had until May 1, 2004, to dispose of all property containing sexually explicit material. The inmates were allowed to either mail any property containing prohibited content to a person of their choosing or destroy it.

Defendant also testified that prior to the amendments to Kan. Admin. Regs. § 44-12-313, KDOC staff spent excessive amounts of time: (1) reviewing publications to determine what was allowable and what was not; (2) processing and deciding appeals from the initial decision; and (3) processing notifications and other information related to ordering, receiving, or failing to receive such materials. Defendant further testified that (1) there was not an easier alternative in dealing with sexually explicit materials; (2) redacting the prohibited material was not a workable alternative because KDOC receives mail for thousands of inmates; and (3) it would be costly and cumbersome for staff members to redact the sexually explicit material from each publication.

**C. Discussion**

"In order to prevail on [his] 42 U.S.C. § 1983 claim, plaintiff must demonstrate that [he] suffered a deprivation of a federally protected right." *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003). Plaintiff alleges defendant violated his First Amendment rights by amending Kan. Admin. Regs. § 44-12-313, thereby banning all sex and nudity

related material, and in forcing plaintiff to dispose of his magazines, art work, and other property. Plaintiff alleges defendant violated his Fourth Amendment rights by forcing him to dispose of his sex– and nudity–related property and by illegally seizing his property—10–12 magazines and etchings in cups. Finally, Plaintiff alleges defendant violated his Fourteenth Amendment rights by banning all sex– and nudity–related materials without prior notice and opportunity to be heard, and in forcing plaintiff to dispose of all of his sex– and nudity–related materials without prior notice and opportunity to be heard.

### *1. First Amendment*

"Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citations omitted). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court must examine a challenged regulation under the four-part test set out in *Turner*: (1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest; (2) whether alternative means of exercising the constitutional right remain available to inmates; (3) any effect accommodating the right would have on guards, inmates, and the allocation of prison resources; and (4) the absence of ready alternatives. *Id.* at 89–90; *accord Jacklovich*, 392 F.3d at 426. Plaintiff bears the burden to disprove the validity of the regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (10th Cir. 2003).

The first *Turner* factor is multifold. The court must determine whether the governmental objective underlying the regulation is legitimate and neutral and whether the regulation is rationally related to that objective. *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989). Defendant implemented

-11-

the regulation for three reasons: (1) to protect institutional security; (2) to facilitate rehabilitation of sex offenders; (3) and to prevent sexual harassment. These rationales serve legitimate penological interests. *Id.* at 415 (finding regulations expressly aimed at protecting prison security serve a purpose that is central to all other corrections goals); *Pell v. Procunier*, 417 U.S. 817, 823 (1974) ("[A]nother paramount objective of the corrections system is the rehabilitation of those committed to its custody"); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) ("[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular likewise is legitimate.").

Defendant's affidavit justifies the need for the regulation in relation to the governmental objectives. Sexually explicit materials can lead to the open performance of lewd acts, disrupting overall security and order. Possession of such materials also creates a security concern by identifying homosexual inmates, who are often targeted for exploitation or violent attack. Defendant also explained that sexually explicit materials interfere with the treatment and management of sex offenders. A blanket ban prevents non-sex offenders from trading or dealing the sexually explicit materials with sex offenders. Finally, the materials create a potential for sexual harassment complaints. Before the ban on sexually explicit material, prison staff complained about being required to view these materials while performing their duties, and inmates had made comments comparing prison staff to the individuals in the materials. These are valid concerns that make the governmental objective underlying the regulation legitimate.

The regulation is neutral; it bans sexually explicit material due to its impact on prison security, regardless of gender or sexual orientation. *See Thornburgh*, 490 U.S. at 415–16 ("Where, as here, prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' in the technical sense in which we

-12-

meant and used that term in *Turner*."). Further, there is a rational connection between the regulation and the governmental objectives. The regulation banning sexually explicit material directly addresses each of the objectives set out by defendant. *See, e.g., Jones v. Salt Lake County*, 503 F.3d 1147, 1155–56 (10th Cir. 2007) ("The jail's ban on inmate access to 'sexually explicit material' and 'technical publications' is expressly aimed at advancing jail security and the ban on 'sexually explicit material' also protects the safety of jail personnel and other inmates."); *Mauro*, 188 F.3d at 1054 (noting the relationship between the jail's policy of prohibiting sexually explicit materials and the goals of preventing sexual harassment, inmate rehabilitation, and jail security is not so "remote as to render the policy arbitrary or irrational.").

The second *Turner* factor—whether there is an alternative means of exercising the constitutional right—is satisfied where the regulation permits a broad range of publications to be sent, received, and read. *See Thornburgh*, 490 U.S. at 418. In this case, inmates may continue to subscribe to periodicals, as long as the incoming publication does not contain prohibited content, as well as access publications in the general prison library. The second factor is satisfied.

The third factor to be addressed under the *Turner* analysis is the impact that accommodation of the asserted constitutional right will have on guards, inmates, and the allocation of prison resources. *Turner*, 482 U.S. at 90. As discussed above, the sexually explicit materials banned by the regulation can lead to the disruption of the overall security and order of the prison, lead to staff complaints, and thwart sex offender rehabilitation. According to defendant, if this regulation were to be removed, the staff would expend additional time and resources monitoring inmates to prevent the potential outcomes listed above. As he testified in his affidavit, sexually explicit materials lead to lewd acts and create the potential for violent attacks on homosexual inmates. He also testified that it is extremely difficult to keep sexually explicit materials away from sex offenders because

having them in the prison creates a market for the contraband. And he explained the potential for sexual harassment complaints. Accommodating the exercise of plaintiff's right to possess sexually explicit material would have a negative effect on other prisoners, staff, and prison resources, thus the third *Turner* factor is also satisfied.

The final *Turner* factor requires the court to consider whether ready alternatives exist. "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* at 90–91. Instead, if plaintiff can point to an alternative that fully accommodates his rights at *de minimis* cost to valid penological interests, the court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. *Id.* at 91. Here, plaintiff suggests as an alternative that KDOC house sex-offender inmates in a single cellhouse where it can assure that sex offenders do not have access to the material. Plaintiff asserts that this would be less costly than enforcing the regulation, but he does not support this allegation with any factual support. Furthermore, plaintiff's alternative remedy does not address the regulation's other governmental objectives—institutional security and sexual harassment. Plaintiff has not raised an issue of fact that an obvious, easy alternative exists that would accommodate his rights at *de minimis* cost to valid penological interests.

For these reasons, the court finds that defendant is entitled to summary judgment on plaintiff's First Amendment claims.

### 2. *Fourth Amendment*

Plaintiff's complaint alleges defendant violated his Fourth Amendment rights by seizing or forcing him to dispose of his sexually explicit material. Defendant argues that (1) plaintiff's allegations do not establish a Fourth Amendment violation and (2) defendant did not personally

participate in the seizure of plaintiff's materials.

"Prisoners are not protected under the Fourth Amendment from unreasonable searches of their prison cells or from the wrongful seizure of property contained in their cells because 'the Fourth Amendment does not establish a right to privacy in prisoners' cells.'" *Rodriguez-Rodriguez v. United States*, 4 F. App'x 637, 639 (10th Cir. 2001) (citing *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517, 522–30 (1984))). Therefore, plaintiff's Fourth Amendment claim based on the seizure of his sexually explicit materials necessarily fails. Additionally, a prisoner's constitutional rights must be exercised with due regard for the requirements of prison administration and analyzed under *Turner*. *See, e.g., Hayes*, 70 F.3d at 1146. As discussed above, Kan. Admin. Regs. § 44-12-313 is constitutional, and thus, so is its implementation. Accordingly, the court finds that defendant's motion for summary judgment on this claim should be granted.

### 3. *Fourteenth Amendment*

Plaintiff alleges defendant violated his Fourteenth Amendment rights by banning and forcing plaintiff to dispose of sexually explicit materials without prior notice and opportunity to be heard. "A prison regulation does not violate a prisoner's substantive-due-process rights unless the prisoner proves that the regulation lacks "a rational relation to legitimate penological interests." *Sperry v. Werholtz*, 321 F. App'x 775, 778 (10th Cir. 2009) (citing *Overton* , 539 U.S. at 132). For the reasons discussed above, the court finds that Kan. Admin. Regs. § 44-12-313 is rationally related to legitimate penological interests.

When evaluating a procedural due process claim, the court considers (1) whether the individual possessed a protected property interest to which due process protection was applicable; and (2) whether the individual was afforded an appropriate level of process. *Camuglia v. City of*

*Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). Even if plaintiff possessed a protected property interest in the sexually explicit material, his claim must fail because he was afforded an appropriate level of process. No hearing is necessary when a prison regulation is a general prison policy applicable to all KDOC inmates and there are no factual issues to resolve. *Sperry*, 321 F. App'x at 779. Here, there is no dispute that Kan. Admin. Regs. § 44-12-313 is a general KDOC policy, that plaintiff is an inmate, or that the materials were sexually explicit. As the court determined in *Sperry*, the procedural due process issue "was effectively decided when the policy itself was enacted. And [Plaintiff] had no right to participate in the enactment process." 321 F. App'x at 779 (finding that plaintiff was afforded all the process he was due because KDOC's policy requiring Kansas inmates to place 10% of all funds received from outside sources into a mandatory savings account was a general prison policy applicable to all inmates and there were no factual disputes).

For these reasons, the court finds that defendant is entitled to summary judgment on plaintiff's Fourteenth Amendment claims.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Strike Defendant's Affidavit (Doc. 130) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 125) is granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 127) is denied.

**IT IS FURTHER ORDERED** that the clerk is ordered to close the case after judgment is entered.

Dated this 18th day of May 2010, at Kansas City, Kansas.

                                    **s/ Carlos Murguia**
                                    **CARLOS MURGUIA**
                                    **United States District Judge**